Fischer, Appellant, *v.* Potamkin et al.

Argued November 30, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Samuel J. Gottesfeld,* for appellant.—It cannot be said that the term "profits" or "at a profit" have such a

fixed and inflexible meaning as to preclude resort to oral testimony to determine its meaning: Miller v. Eichberg, 41 Pa. Superior Ct. 435; Baldwin v. Magen, 279 Pa. 302; Welch v. Miller, 210 Pa. 204.

"Profits" is a relative term, equivocal, and susceptible of more than one meaning: Baeder Adamson Co. v. Tunnell, 285 Pa. 356; Foehrenback v. Trust Co., 217 Pa. 331; Republic Trust v. Hughes, 262 Pa. 159, 166; Case v. Cushman, 3 W. & S. 544; Vulcanite Paving Co. v. Phila., 239 Pa. 524; McMullin v. Titus, 222 Pa. 500; Myers's Est., 238 Pa. 195, 210; Tustin v. C. & I. Co., 250 Pa. 425.

No contract is clear or unambiguous where the effect given it is impossible under fundamental canons of construction: Vulcanite Paving v. Phila., 239 Pa. 524; Williamson v. McClure, 37 Pa. 402; Nusbaum v. Ins. Co., 276 Pa. 526; Lacy v. Green, 84 Pa. 514; Wilson v. Wernwag, 217 Pa. 82, 87.

Undoubtedly, the parties intended that plaintiff should acquire some advantage under the profit agreement. This is a determining element in its construction and a construction will not be adopted which gives him nothing: Lacy v. Green, 84 Pa. 514; Tucker v. Fertig, 275 Pa. 351.

*Yale L. Schekter,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1929:

Plaintiff, the two defendants and five other people, calling themselves a syndicate, were the equitable owners of a tract of land, the legal title to which was in a trustee for them. The Bellerose Realty Company—a corporation in which defendants were largely interested, but plaintiff not at all—desired to purchase the property, and entered into an agreement so to do. It was dated July 20, 1925, and provided for certain cash payments at specified intervals, the balance of the pur-

chase price to be secured by a note of the vendee and an accompanying mortgage on the property, respectively "due one year from date of closing (60 days from this date) [with interest] . . . . . . all interest, taxes, etc., to be equalized as of date of closing (sixty days from this date)." All the other members of the syndicate consented to the conveyance, but plaintiff refused to do so; whereupon, possibly to avoid contention over the title, owing to the fact that defendants were directly or indirectly interested on both sides of the transaction, they entered into the agreement with plaintiff upon which this suit is brought.

It is dated July 31, 1925. After reciting the facts regarding the ownership, the proposed conveyance of the property, plaintiff's interest therein and defendant Levey's claim to be paid a commission out of the proceeds of sale, it provides that plaintiff agrees to the conveyance and payment, and that "within sixty days from the date hereof [defendants] will repay or cause to be repaid to [plaintiff his investment in the syndicate, and will] pay or cause to be paid to [him] his proportionate share or part of any and all profits *to be made* by the aforesaid syndicate by reason of the aforesaid conveyance to the Bellerose Realty Company, within six months from the date hereof. That [plaintiff and defendants] agree that the [sales] agreement shall be deemed and considered a part hereof, with the same force and effect as if the same were copied herein at length. Provided there shall be no liability whatsoever hereunder if the sale to the Bellerose Realty Company does not go through and there is no closing under said agreement of sale."

The vendee made the preliminary payments, gave the note and mortgage provided for, and received a deed for the property. Out of the payments actually made, plaintiff received the full amount paid by him to the syndicate, but he was paid nothing on account of the "profits to be made" by the sale, and defendants denied liability

therefor. After the expiration of the six months stipulated for final payment by defendants, he brought this action, though the balance represented by the note and mortgage debt had not yet been paid, nor had anything been realized thereon by the syndicate. Construing the agreement to mean that defendants were not to be liable until the syndicate received the balance of the purchase price in money, the trial judge entered a nonsuit, which the court in banc refused to take off; whereupon plaintiff prosecuted this appeal.

There are five assignments of error, four of which complain of a refusal to receive certain testimony offered by plaintiff. These we need not consider, since we are of opinion that, by a proper construction of the agreement itself, plaintiff was entitled to recover. We do not disagree with the trial judge's conclusion that the word "profits" ordinarily means "the net gains from an investment or the prosecution of some business." Our question is, however, does that word, in the agreement in suit, mean profits actually realized, or those which are provided for in the agreement of sale, whether or not the balance of the purchase price has been paid at the time defendants agree to pay or cause to be paid to plaintiff his share of those profits.

It will be noticed that the words "date of closing" are twice used in the sales agreement, and, in each instance, they mean the date when the deed to the Bellerose Realty Company is to be made, and not the time of payment of the note and mortgage to be then given. There being nothing elsewhere to affect that meaning, they must, when repeated in the proviso to the agreement in suit, be similarly construed: Lippincott v. Stevenson, 273 Pa. 464. Consequently when that proviso says there shall be "no liability whatsoever hereunder if the sale to the Bellerose Realty Company does not go through and there is no closing under said agreement of sale," it does not relieve defendants, since, under the meaning attributable to those words by the agreement itself, the sale

did go through and there was a closing under the agreement of sale. So far as any conclusions can be drawn from that proviso, therefore, it tells against and not for defendants, for it implies that full liability will arise, at the times specified, if the sale does go through, and there is a "closing under the agreement of sale."

So, too, it will be observed that there is no provision, in the agreement in suit, that plaintiff is to depend for recovery upon his share of profits being actually received by the syndicate. Defendants expressly covenant "to pay or cause to be paid to [plaintiff] his proportionate share of any and all profits *to be made* by the aforesaid syndicate by reason of the aforesaid conveyance to the Bellerose Realty Company, within six months of the date hereof." The profits referred to are those "to be made," not those actually made; and there is no qualification of the duty "to pay or cause to be paid...... within six months of the date" of the agreement. Profits which are represented by a purchase-money mortgage *to be paid* in six months, may well be said to be "profits *to be made.*" Apparently, plaintiff was not willing to take any of the risks of the sale, while defendants, who with their coöwners were to pay down money of at least $250,000 and to get all the profits realized by a resale, felt they would risk but little by assuming full liability, so far as concerned plaintiff, for the nonpayment of the balance of the purchase price.

To construe the provisions of the contract as to profits, otherwise than as we have done, would be to render them meaningless, for, without any such agreement, plaintiff would have been entitled, as a member of the syndicate, to his share of the profits when actually realized.

The judgment of the court below is reversed, the nonsuit is taken off, and a procedendo is awarded.